# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **VICTOR K. WILLIAMS,** )<br>)<br>          **Plaintiff,** )<br>)<br>**v.** )<br>)<br>**JACOB J. LEW, in his official capacity** )<br>**as Secretary of the United States** )<br>**Department of the Treasury, and** )<br>**UNITED STATES DEPARTMENT OF** )<br>**THE TREASURY,** )<br>)<br>          **Defendants.** )<br>) | **Case No. 1:14-cv-00183-RJL** |

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF
## MOTION TO DISMISS

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ i

INTRODUCTION .......................................................................................................... 1

BACKGROUND ........................................................................................................... 2

    I.  PLAINTIFF'S ALLEGATIONS ...................................................................... 2

    II.  PROCEDURAL HISTORY............................................................................. 3

STANDARD OF REVIEW .............................................................................................. 3

ARGUMENT................................................................................................................ 4

    I.  THE COURT SHOULD DISMISS THIS CASE FOR LACK OF JURISDICTION BECAUSE PLAINTIFF LACKS STANDING................................................................. 4

        A.  Plaintiff's claim that the government might someday fail to pay on his Treasury securities is far too speculative a future injury to establish standing........................... 5

        B.  Plaintiff's claim of potential government default is a generalized grievance, shared by virtually all members of the public ............................................................. 9

    II.  THE COURT SHOULD DISMISS THIS CASE FOR LACK OF JURISDICTION BECAUSE IT IS NOT RIPE ......................................................................... 12

        A.  Plaintiff's lack of "certainly impending" injury renders his claims constitutionally unripe ............................................................................................... 13

        B.  Plaintiff's claims are not fit for judicial decision, and withholding review of those claims will not cause Plaintiff any hardship ................................................... 13

            1.  Plaintiff's claims rest on uncertain future contingencies and are otherwise unfit for judicial review ............................................................................. 13

            2.  Withholding review would cause Plaintiff no hardship........................................ 16

CONCLUSION........................................................................................................... 17

# TABLE OF AUTHORITIES

**Federal Cases**

\* *Abbott Labs. v. Gardner*,
   387 U.S. 136 (1967),....................................................................................... 12, 13

\* *Allen v. Wright*,
   468 U.S. 737 (1984)........................................................................................ 11, 12

\* *Am. Petroleum Inst. v. EPA*,
   683 F.3d 382 (D.C. Cir. 2012) ........................................................................ 12, 13

\* *Am. Sports Council v. U.S. Dep't of Educ.*,
   850 F. Supp. 2d 288 (D.D.C. 2012) ...................................................................... 6

*Ariz. Christian School Tuition Org. v. Winn*,
   131 S. Ct. 1436 (2011) ......................................................................................... 5

*Bank of Am., N.A. v. FDIC*,
   908 F. Supp. 2d 60 (D.D.C. 2012) ...................................................................... 4

*Block v. Meese*,
   793 F.2d 1303 (D.C. Cir. 1986) ........................................................................... 6

*Bryan v. Fed. Open Market Comm.*,
   235 F. Supp. 877 (D. Mont. 1964) ...................................................................... 11

\* *Clapper v. Amnesty Int'l USA*,
   133 S. Ct. 1138 (2013)................................................................................. 6, 7, 9

\* *Cronin v. FAA*,
   73 F.3d 1126 (D.C. Cir. 1996) ........................................................................... 16

\* *Devia v. NRC*,
   492 F.3d 421 (D.C. Cir. 2007) ........................................................................ 12, 13

*Ex parte Levitt*,
   302 U.S. 633 (1937)........................................................................................... 10

\* *Frothingham v. Mellon*,
   262 U.S. 447 (1923)...................................................................................... 10, 11

*Full Value Advisors, LLC v. SEC*,
   633 F.3d 1101 (D.C. Cir. 2011) ......................................................................... 12

*Grand Lodge of Fraternal Order of Police v. Ashcroft*,
   185 F. Supp. 2d 9 (D.D.C. 2001) ....................................................................... 16

\* *Hollingsworth v. Perry*,
   133 S. Ct. 2652 (2013)..................................................................................... 4, 5

\* *Int'l Longshoremen's & Warehousemen's Union v. Boyd*,
   347 U.S. 222 (1954)...................................................................................... 12, 15

\* *J. Roderick MacArthur Found. v. FBI*,
   102 F.3d 600 (D.C. Cir. 1996) ............................................................................. 5

\* *Jones & Assocs., Inc. v. Dist. of Columbia*,
   797 F. Supp. 2d 129 (D.D.C. 2011) ..................................................................... 9

\* *La. Envtl. Action Network v. Browner*,
   87 F.3d 1379 (D.C. Cir. 1996) ......................................................................... 9, 16

\* *Lance v. Coffman*,
   549 U.S. 437 (2007).......................................................................................... 10

\* *Lujan v. Defenders of Wildlife,*
   504 U.S. 555 (1992) ........................................................................... *passim*
*Nat'l Park Hospitality Ass'n v. Dep't of Interior,*
   538 U.S. 803 (2003) .................................................................................. 12
\* *Nat'l Treasury Emps. Union v. United States,*
   101 F.3d 1423 (D.C. Cir. 1996) ...................................................... 5, 13, 15
\* *Nat'l Wildlife Fed'n v. United States,*
   626 F.2d 917 (D.C. Cir. 1980) ............................................................... 11
\* *Office of Commc'n of United Church of Christ v. FCC,*
   826 F.2d 101 (D.C. Cir. 1987) ............................................................... 16
\* *Ohio Forestry Ass'n v. Sierra Club,*
   523 U.S. 726, (1998) .............................................................................. 15
*Raines v. Byrd,*
   521 U.S. 811 (1997) ................................................................................. 4
\* *Renne v. Geary,*
   501 U.S. 312 (1991) ..................................................................... 4, 12, 14
\* *Reuss v. Balles,*
   584 F.2d 461 (D.C. Cir. 1978) ............................................................... 11
*Schlesinger v. Reservists Comm. to Stop the War,*
   418 U.S. 208 (1974) ............................................................................... 11
*State Farm Mut. Auto. Ins. Co. v. Dole,*
   802 F.2d 474 (D.C. Cir. 1986) ............................................................... 14
\* *Summers v. Earth Island Inst.,*
   555 U.S. 488 (2009) ........................................................................ 8, 9, 11
\* *Texas v. United States,*
   523 U.S. 296 (1998) ........................................................................ *passim*
*United States ex rel. Digital Healthcare, Inc. v. Affiliated Computer Servs., Inc.,*
   778 F. Supp. 2d 37 (D.D.C. 2011) .......................................................... 4
\* *United Transp. Union v. ICC,*
   891 F.2d 908 (D.C. Cir. 1989) ................................................................. 7
*Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc.,*
   454 U.S. 464 (1982) ................................................................................. 4
\* *Warth v. Seldin,*
   422 U.S. 490 (1975) ....................................................................... 4,10, 12
*Whitmore v. Arkansas,*
   495 U.S. 149 (1990) ................................................................................. 6
\* *Worth v. Jackson,*
   451 F.3d 854 (D.C. Cir. 2006) ............................................................... 14
\* *Wyo. Outdoor Council v. U.S. Forest Serv.,*
   165 F.3d 43 (D.C. Cir. 1999) ........................................................... 12, 13

**Federal Statutes**
31 U.S.C. § 3101 ........................................................................... 1, 2, 15

**Federal Regulations**
31 C.F.R § 351.6 ..................................................................................... 2
31 C.F.R § 353.35(b) ............................................................................. 2

31 C.F.R § 356.2 ........................................................................................................... 2
31 C.F.R § 356.5 ........................................................................................................... 2
31 C.F.R § 359.1 ........................................................................................................... 2
31 C.F.R § 359.6 ........................................................................................................... 2
31 C.F.R § 360.35 ......................................................................................................... 2

**<u>Federal Rules</u>**

Fed. R. Civ. P. 12(b)(1) ............................................................................................... 3, 4
Fed. R. Civ. P. 12(b)(6) ................................................................................................. 4

## **INTRODUCTION**

Plaintiff is a taxpayer-citizen who—like countless other taxpayer-citizens—has invested in bonds, notes, bills, and other securities issued by Defendant the United States Department of the Treasury ("Treasury"). This public debt held by Plaintiff, along with virtually all of the nation's debt, is subject to the federal debt limit statute, 31 U.S.C. § 3101. Although the operation of the debt limit is currently suspended by statute and not in force until March 2015, and despite the fact that the United States Government has *never* defaulted on its debt obligations as a result of a failure to increase the debt limit, Plaintiff appears to allege that, at some unspecified future date, the debt limit will cause the government to fail to pay on his Treasury securities (and all other government obligations). On that basis, Plaintiff asks the Court to declare the federal debt limit statute unconstitutional and to enjoin Defendants Treasury and the Secretary of Treasury from abiding by it.

Because Plaintiff's claims are based on anticipatory speculation about the remote possibility of government default and failure to pay on Plaintiff's Treasury securities, this Court lacks jurisdiction over this lawsuit. First, Plaintiff lacks Article III standing. At present, he has suffered no injury, and he has failed to show that any claimed future injury to him is certainly impending. In addition to being improperly speculative, Plaintiff's concern about potential future default by the United States Government is a generalized grievance shared by virtually every member of the public, and thus not a proper basis for standing. Second, his claims are unripe. In particular, Plaintiff's claims are unfit for judicial review because they rest on various contingent and uncertain future events, and Plaintiff would suffer no hardship from withholding or postponing review of his claims.

For these reasons and those set forth below, Defendants respectfully ask this Court to grant their motion to dismiss for lack of jurisdiction.

# BACKGROUND

## I.     PLAINTIFF'S ALLEGATIONS

Plaintiff alleges that he "is a United States, taxpayer-citizen who holds a very modest amount of Treasury-issued public debt instruments of varied types and durations." First Am. Compl. for Declaratory J. to Void the Debt Ceiling ¶ 36 ("FAC"), Mar. 5, 2014, ECF No. 4. Specifically, Plaintiff is "the purchaser and holder of United States public debt in the form of savings bonds and Treasury bills, notes, bonds, and TIPS of various durations (4-weeks, 13-weeks, 26-weeks, 52-week, 3-years, 5-years, 7-years, 30-years)." *Id.* ¶ 39.[1] Plaintiff purchased his debt holdings through the "TreasuryDirect.gov" website. *Id.* Plaintiff notes that he is "a full-time member of a law faculty" at Catholic University of America, but he brings this action "solely as an individual" taxpayer-citizen. *Id.* ¶ 36.

In this action, Plaintiff seeks to invalidate the federal debt limit statute, 31 U.S.C. § 3101, which limits the amount of public debt that may be outstanding at one time to a sum certain, "subject to changes periodically made" through the congressional budget process or as otherwise provided by Congress. *Id.* § 3101(b). The debt limit is currently suspended, and therefore not in effect, through March 15, 2015. *See* Temporary Debt Limit Extension Act, Pub. L. No. 113-83,

---

[1] By way of background, the Treasury securities held by Plaintiff have the following characteristics. Treasury *bills* are sold at a discount from their face value, have maturities of not more than 1 year, and are payable by Treasury at their face value at maturity. When a bill matures, the holder receives the face value, and the difference between the purchase price and face value is the interest earned. *See* 31 C.F.R. §§ 359.1, 356.5(a). Treasury *notes* and *bonds* are issued with a stated rate of interest, have maturities of 1-10 years (notes) or more than 10 years (bonds), and pay interest semiannually. The holder receives semiannual interest payments, and when a note or bond matures, the holder receives the face value. *See id.* §§ 356.5(b)(1), (c)(1). *Treasury Inflation-Protected Securities* ("TIPS") are notes or bills with certain protections against inflation. *See id.* §§ 356.5(b)(2), (c)(2). Treasury bills, notes, bonds and TIPS are considered to be "marketable" securities, which is defined by Treasury regulations to mean securities "that may be bought, sold and transferred in the secondary market." *Id.* § 356.2. Therefore, holders of Treasury marketable securities can sell their securities for cash in the secondary market. U.S. Department of the Treasury, "Selling Treasury Bills, Notes, Bonds, or TIPS," http://www.treasurydirect.gov/indiv/research/indepth/tbonds/res_tbond_sell.htm (last visited Apr. 28, 2014). Treasury *savings bonds* are issued in a variety of series with different attributes. Although savings bonds are not tradable in a secondary market, series of savings bonds issued before February 2003 may be redeemed by the holder after 6 months, and series issued after February 2003 may be redeemed after 1 year. 31 C.F.R §§ 351.6, 353.35(b), 359.6 and 360.35. *See, e.g., id.* pts. 351, 353 & pts. 359, 360 (issuance of recent savings bonds). For further background about Treasury securities, see U.S. Department of the Treasury, "The Basics of Treasury Securities," http://www.treasurydirect.gov/instit/research/faqs/faqs_basics.htm (last visited Apr. 28, 2014).

§ 2(a), 128 Stat. 1011, 1011 (2014). Plaintiff claims that the debt limit statute violates "Section Four of the Fourteenth Amendment to the Constitution of the United States," "Plaintiff's Fifth Amendment 'due process' rights," and "the Constitution's structural and functional separation of powers in preventing the Executive from carrying out sworn Article II § 3 duties." FAC ¶ 42. To remedy these alleged violations, Plaintiff requests a declaratory judgment that the debt limit statute "is unconstitutional and void"; a permanent injunction "to prohibit Defendants from relying upon, invoking, or enforcing the invalid debt ceiling" or, alternatively "a writ of mandamus to compel the Defendants to treat the debt ceiling statute as null and void"; and judicial supervision of Defendants' compliance with such orders. *Id.* at 30.

Plaintiff asserts that he has Article III standing because of his "modest amount of Treasury-issued" securities—that is, because he is "the purchaser and holder of United States public debt in the form of savings bonds and Treasury bills, notes, bonds, and TIPS of various durations." *Id.* ¶¶ 36, 39. On this basis, "Plaintiff avers direct, individual, concrete, and certainly impending harm from the unconstitutional debt ceiling statute." *Id.* ¶ 39.

## II.   PROCEDURAL HISTORY

Plaintiff filed a "Complaint for Declaratory Judgment to Void the Debt Ceiling" on February 7, 2014. ECF No. 1. He filed an amended complaint on March 5, 2014, in which he alleged, in part, that "[i]n mid-February, 2014, Congress extended the debt ceiling's suspension until March 16, 2015." FAC ¶ 4; *see* Temporary Debt Limit Extension Act § 2(a). Defendants now move to dismiss Plaintiff's lawsuit for lack of subject-matter jurisdiction under Rule 12(b)(1) of the Federal Rules of Civil Procedure.

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(1) requires dismissal of a complaint where the court lacks subject matter jurisdiction. Plaintiff bears the burden of establishing that the court has subject matter jurisdiction, *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992), and courts "presume that [they] lack jurisdiction unless the contrary appears affirmatively from the record,"

*Renne v. Geary*, 501 U.S. 312, 316 (1991) (quotations omitted). A plaintiff's factual allegations in the complaint "will bear closer scrutiny in resolving a 12(b)(1) motion than in resolving a 12(b)(6) motion for failure to state a claim." *United States ex rel. Digital Healthcare, Inc. v. Affiliated Computer Servs., Inc.*, 778 F. Supp. 2d 37, 43 (D.D.C. 2011) (citation and internal quotation marks omitted). In deciding a 12(b)(1) motion, a court need not limit itself to the complaint; rather, it "may consider such materials outside the pleadings as it deems appropriate to resolve the question whether it has jurisdiction in the case." *Bank of Am., N.A. v. FDIC*, 908 F. Supp. 2d 60, 76 (D.D.C. 2012) (citation and internal quotation marks omitted).

## ARGUMENT

## I. THE COURT SHOULD DISMISS THIS CASE FOR LACK OF JURISDICTION BECAUSE PLAINTIFF LACKS STANDING

To establish Article III standing, a plaintiff must show "a personal stake in the outcome of the controversy [so] as to warrant his invocation of federal-court jurisdiction." *Warth v. Seldin*, 422 U.S. 490, 498 (1975) (quotations omitted); *see also Hollingsworth v. Perry*, 133 S. Ct. 2652, 2662 (2013) ("To have standing, a litigant must seek relief for an injury that affects him in a personal and individual way," and "must possess a direct stake in the outcome of the case." (quotations omitted)). The litigant must demonstrate that he has suffered an "injury in fact" that is both "concrete and particularized" and "actual or imminent, not conjectural or hypothetical"; that injury must also be fairly traceable to the challenged conduct and likely to be redressed by a favorable judicial decision. *Lujan*, 504 U.S. at 560-61.

These Article III standing requirements assure that legal questions "will be resolved, not in the rarified atmosphere of a debating society, but in a concrete factual context conducive to a realistic appreciation of the consequences of judicial action." *Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc.*, 454 U.S. 464, 472 (1982). Analysis of these requirements, which reflect fundamental separation-of-powers concerns, must be "especially rigorous" when federal courts are asked to conduct constitutional review of the actions of co-equal branches of government. *Raines v. Byrd*, 521 U.S. 811, 819-820 (1997); *see also Ariz.*

4

*Christian School Tuition Org. v. Winn*, 131 S. Ct. 1436, 1449 (2011) ("Making the Article III standing inquiry all the more necessary are the significant implications of constitutional litigation, which can result in rules of wide applicability that are far beyond Congress' power to change."); *Hollingsworth*, 133 S. Ct. at 2661 ("In light of this overriding and time-honored concern about keeping the Judiciary's power within its proper constitutional sphere, we must put aside the natural urge to proceed directly to the merits of [an] important dispute and to settle it for the sake of convenience and efficiency." (quotations omitted)).

In this challenge to the constitutionality of an Act of Congress, Plaintiff has not satisfied these core requirements of standing. He does not allege any actual or present harm from the federal debt limit statute, and his speculative assertion that the government might—for the first time in this nation's history—fail in its obligations to a holder of Treasury securities because of a future failure to raise the debt limit, is insufficient to invoke this Court's jurisdiction.

### A.    Plaintiff's claim that the government might someday fail to pay on his Treasury securities is far too speculative a future injury to establish standing

In this case, Plaintiff does not allege any current injury; he claims standing on the basis of anticipated future harm only. *See* FAC ¶ 39; *see also id.* at ¶¶ 42(B), 50, 56 (referring in passing to "certainly impending harm"). To satisfy Article III standing, therefore, the future injury Plaintiff alleges must be "imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at 560 (quotations omitted); *see also J. Roderick MacArthur Found. v. FBI*, 102 F.3d 600, 606 (D.C. Cir. 1996) ("It is not enough for the [plaintiff] to assert that it might suffer an injury in the future, or even that it is likely to suffer an injury at some unknown future time. Such 'someday' injuries are insufficient." (quoting *Lujan*, 504 U.S. at 564)). This requirement "ensure[s] that the alleged injury is not too speculative for Article III purposes—that the injury is *certainly* impending." *Lujan*, 504 U.S. at 564 n.2 (quotations omitted); *Nat'l Treasury Emps. Union v. United States*, 101 F.3d 1423, 1427 (D.C. Cir. 1996). As the Supreme Court has "repeatedly reiterated," a "'threatened injury must be *certainly impending* to constitute injury in fact,'" and "'allegations of

5

*possible* future injury' are not sufficient." *Clapper v. Amnesty Int'l USA*, 133 S. Ct. 1138, 1147 (2013) (quoting *Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990)).

Plaintiff's claims are the very sort of "allegations of *possible* future injury," *id.*, that are insufficient to establish standing. Although his standing allegations are sparse, Plaintiff notes that he "is a United States, taxpayer-citizen who holds a very modest amount of Treasury-issued public debt instruments." FAC ¶ 36. His only direct articulation of his claimed standing is found in paragraph 39 of the Amended Complaint, where Plaintiff asserts that he "has standing to bring this action including as the purchaser and holder of United States public debt . . . of various durations" and that he "avers direct, individual, concrete, and certainly impending harm from the unconstitutional debt ceiling statute." These allegations essentially restate the legal standards for standing, which is a legally insufficient basis to establish this Court's jurisdiction. *See Am. Sports Council v. U.S. Dep't of Educ.*, 850 F. Supp. 2d 288, 292 (D.D.C. 2012) ("A 'mixture of speculation and conclusory assertion . . . does not satisfy the Supreme Court's requirement for 'specific, concrete facts' demonstrating injury, and 'particularized allegations of fact.'" (quoting *Block v. Meese*, 793 F.2d 1303, 1308 (D.C. Cir. 1986)).

In addition, allegations located elsewhere in the complaint indicate that Plaintiff's alleged future injury rests on his concern that the government will fail to pay on his "modest sum" of public debt. For example, the complaint refers to "Defendants' threat of non-payment of Plaintiff's securities" and potential "ultimate default on those debts and all other public debt." FAC ¶¶ 39, 53; *see also id.* ¶ 50 (describing, "in the event of a default," Plaintiff's alleged interest in "whether and how the Defendants will meet concurrent obligations such as payment of [Plaintiff's] debt and that of various state sovereign entitlement programs"); *id.* ¶ 52 (noting Plaintiff's desire for "prospective relief that will insure the Government's *future* obligations to pay Plaintiff's longer term maturing securities holdings well into the future" (quotations omitted)). These allegations, however, do not and cannot carry Plaintiff's burden to demonstrate that his future injury is "certainly impending."

6

Indeed, Plaintiff's standing allegations are altogether speculative, resting on the hypothetical premise that the United States government will—at some unknown future date—fail to pay on Plaintiff's Treasury securities because of the debt limit statute. That premise finds no support in the nearly one hundred years since Congress has legislated limits on the public debt.[2] The United States Government has *never* defaulted on its debt obligations as a result of a failure by Congress to increase the debt limit. Moreover, Treasury securities such as those held by Plaintiff "are considered a safe and secure investment option because the full faith and credit of the U.S. government guarantees that interest and principal payments will be paid on time." U.S. Department of the Treasury, "The Basics of Treasury Securities," http://www.treasurydirect.gov/instit/research/faqs/faqs_basics.htm (last visited Apr. 28, 2014). Thus, the unprecedented government default Plaintiff claims to fear is, at most, a mere "*possible* future injury," and not one that is "*certainly* impending." *Clapper*, 133 S. Ct. at 1147 (quotations omitted).

Just as the ultimate nature of Plaintiff's future injury—the government's failure to pay on his government securities—is speculative, so are the numerous and uncertain steps that would precede such hypothetical non-payment. Standing cannot rest on a "speculative chain of possibilities." *Id.* at 1150; *see also, e.g.*, *United Transp. Union v. ICC*, 891 F.2d 908, 912 (D.C. Cir. 1989) ("[W]hen considering any chain of allegations for standing purposes," the Court "may reject as overly speculative those links which are predictions of future events (especially future actions to be taken by third parties) and those which predict a future injury that will result from present or ongoing actions[.]"). Here, there are a series of contingencies that would have to occur before Plaintiff would suffer any actual harm as a result of the debt limit statute. First, the debt

---

[2] There have been general statutory limits on the public debt since 1917, and since 1940, Congress has enacted nearly 100 pieces of legislation to increase, suspend, or otherwise alter the statutory limits on federal debt. *See, e.g.*, Second Liberty Bond Act, Pub. L. No. 65-43, 40 Stat. 288 (1917); Public Debt Act of 1941, Pub. L. No. 77-7, § 2, 55 Stat. 7 (1941); Temporary Debt Limit Extension Act, Pub. L. No. 113-83, § 2(a), 128 Stat. 1011, 1011 (2014); *see also* Office of Management & Budget, "Historical Tables," Table 7.3—Statutory Limits on Federal Debt: 1940–Current, *available at* http://www.whitehouse.gov/omb/budget/Historicals/ (last visited Apr. 28, 2014).

limit itself must be reached. However, the debt limit currently is suspended through March 15, 2015. *See* Temporary Debt Limit Extension Act § 2(a); FAC ¶ 4 (acknowledging suspension). Moreover, by that time, Congress may well pass legislation to raise the debt limit or further suspend it, as Congress has regularly done in the nearly 100-year history of debt limit statutes. *See supra* n. 2. Second, as Plaintiff's complaint acknowledges, even if the debt limit is reached, Treasury has authority to take certain extraordinary measures to temporarily preserve lawful borrowing authority without exceeding the debt limit. *See, e.g.*, Letter from Secretary Jacob J. Lew to Honorable John A. Boehner, May 17, 2013, *available at* http://www.treasury.gov/initiatives/Documents/Debt%20Limit%205-17-13%20Boehner.pdf (describing "extraordinary measures" in appendix) (last visited Apr. 28, 2014). Third, once such measures were hypothetically to be exhausted, the United States would be in the position of funding government obligations with the cash it would have on hand on any given day. *See, e.g.*, Letter from Secretary Jacob J. Lew to Honorable John A. Boehner, Aug. 26, 2013, *available at* http://www.treasury.gov/initiatives/documents/082613%20debt%20limit%20letter%20to%20congress.pdf (last visited Apr. 28, 2014). Only after all three of these contingencies occurred would the possibility even arise that the United States Government might be unable to meet all of its obligations consistent with the debt limit statute.

Even then—in the hypothetical and highly improbable event that all of the above were to take place—it would still remain uncertain whether *Plaintiff* would "be himself among the injured." *Lujan*, 504 U.S. at 563; *Summers v. Earth Island Inst.*, 555 U.S. 488, 494 (2009). That is, whether or not the Treasury securities *Plaintiff holds* would be affected would depend, among other things, upon: whether Plaintiff continues to hold those securities at the time of this hypothetical default (a contingency within "[P]laintiff's own control," *Lujan*, 504 U.S. at 564 n.2);[3] whether a principal or interest payment on Plaintiff's particular securities comes due

---

[3] As noted already, *supra* n. 1, Treasury bills, notes, and bonds are marketable securities that can be bought and sold in the secondary market at any time, and savings bonds may be redeemed after 6 months or 1 year, depending on the series. In addition, it would appear that, by March 15, 2015, some of Plaintiff's securities—those

(Footnote continued on next page…)

during a period when the United States Government hypothetically cannot meet all of its obligations consistent with the debt limit statute; and whether, on that date, a payment *to Plaintiff* were hypothetically to go unmade because of the government's cash shortfall. And again, the premise of this entire speculative chain of events is itself based on the hypothetical and speculative premise that Congress would *decline* to raise or further suspend the debt limit, notwithstanding its unfailing record of raising or extending the debt limit when necessary. *See supra* n. 2.

"This multi-tiered speculation must defeat [Plaintiff's] claim of injury." *La. Envtl. Action Network v. Browner*, 87 F.3d 1379, 1383 (D.C. Cir. 1996). An injury is not sufficiently imminent for Article III purposes "when, as here, the plaintiff alleges only an injury at some indefinite future time, and the acts necessary to make the injury happen are at least partly in the plaintiff's own control," *Lujan*, 504 U.S. at 564 n.2, nor when, as here, the alleged future injury "relies on a highly attenuated chain of possibilities," *Clapper*, 133 S. Ct. at 1148. "Potential harms and possible placement in 'jeopardy' are precisely the type of 'conjectural [and] hypothetical' injuries that fail to satisfy Article III standing requirements." *Jones & Assocs., Inc. v. Dist. of Columbia*, 797 F. Supp. 2d 129, 134 (D.D.C. 2011) (quoting *Lujan*, 504 U.S. at 560). In sum, Plaintiff's suggestion that the United Sates will fail to pay his particular Treasury securities at some indefinite future time is not the "certainly impending" injury required to establish Article III standing.

**B.    Plaintiff's claim of potential government default is a generalized grievance, shared by virtually all members of the public**

Plaintiff's claimed basis for standing suffers from the further defect that his concern about the hypothetical possibility of government default at some future date is an interest shared almost universally by the public. "[W]hen the asserted harm is a 'generalized grievance' shared

---

with durations of "4-weeks, 13-weeks, 26-weeks, [and] 52-weeks," FAC ¶ 39—will have matured. As for the remaining securities—those with durations of "3-years, 5-years, 7-years, [and] 30-years," *id.*—the complaint does not indicate when those securities either mature or pay principal and interest.

in substantially equal measure by all or a large class of citizens, that harm alone normally does not warrant exercise of jurisdiction." *Warth*, 422 U.S. at 499. "To have standing," the "plaintiff must have more than 'a general interest common to all members of the public.'" *Lance v. Coffman*, 549 U.S. 437, 440 (2007) (quoting *Ex parte Levitt*, 302 U.S. 633, 634 (1937) (per curiam)). Here, the Amended Complaint shows that Plaintiff's concern of potential government default is shared in substantially equal measure by virtually every person or organization in the United States (and many abroad); it therefore is an inappropriate basis for standing.

As an initial matter, countless individuals are similarly situated to Plaintiff. The Amended Complaint alone suggests, for example, that the potential government default about which Plaintiff speculates would be felt not only by every holder of the public debt (which presently exceeds $17 trillion[4]), FAC ¶ 1, but also by every person or organization on the receiving end of Treasury's "millions of daily automated payments," *id.* ¶ 24, and every person or organization affected by the government's "other vested debt obligations (e.g., Social Security, Medicare, Medicaid, and veterans' pensions)," or "basic government operations (e.g., regulations, defense, infrastructure, and federal courts/justice)," *id.* ¶ 5. In other words, Plaintiff's claimed concern regarding the prospect of a future default by the United States is not a matter of individual concern, but rather a generalized and public one. *Cf. Frothingham v. Mellon*, 262 U.S. 447, 487 (1923) ("The administration of any statute, likely to produce additional taxation to be imposed upon a vast number of taxpayers, the extent of whose several liability is indefinite and constantly changing, is essentially a matter of public and not of individual concern."). Under Plaintiff's impermissible theory of standing, any individual affected by a government obligation—be it her benefit payment, salary, interest on a Treasury security, or otherwise—would be able to maintain a suit.[5]

---

[4]   *See* U.S. Department of the Treasury, "The Debt to the Penny and Who Holds It," http://www.treasurydirect.gov/NP/debt/current (last visited Apr. 28, 2014).
[5]  Plaintiff has suggested as much in his legal commentary. *See* Victor Williams, "Prevent Debt Ceiling Catastrophe: Bondholders Sue Jack Lew," Oct. 7, 2013, http://www.huffingtonpost.com/victor-williams/prevent-

(Footnote continued on next page…)

Just as taxpayer standing generally is impermissible, so is Plaintiff's theory of standing, as the law does not authorize standing based on generalized grievances potentially affecting a vast swath of the public. *See Summers*, 555 U.S. at 497 ("[I]t would exceed [Article III's] limitations if, at the behest of Congress and in the absence of any showing of concrete injury, we were to entertain citizen suits to vindicate the public's nonconcrete interest in the proper administration of the laws . . . [T]he party bringing suit must show that the action injures him in a concrete and personal way." (internal quotation omitted)); *Frothingam*, 262 U.S. at 487 ("If one taxpayer may champion and litigate such a cause, then every other taxpayer may do the same, not only in respect of the statute here under review, but also in respect of every other appropriation act and statute whose administration requires the outlay of public money, and whose validity may be questioned. The bare suggestion of such a result, with its attendant inconveniences, goes far to sustain the conclusion which we have reached, that a suit of this character cannot be maintained."); *Reuss v. Balles*, 584 F.2d 461, 469-70 (D.C. Cir. 1978) (rejecting "bondholder theory" of standing and finding assertion that government action "could reduce the value of [plaintiff's] bonds in several ways" was "a very generalized grievance, one held in common, to some degree, by virtually all members of the public" (citing *Schlesinger v. Reservists Comm. to Stop the War*, 418 U.S. 208, 220-21 (1974); *Bryan v. Fed. Open Market Comm.*, 235 F. Supp. 877, 881-82 (D. Mont. 1964)); *cf. Nat'l Wildlife Fed'n v. United States*, 626 F.2d 917, 924 (D.C. Cir. 1980) ("We think [judicial] restraint is necessary where, as here, appellants ask us to intervene in wrangling over the federal budget and budget procedures. Such matters are the archetype of those best resolved through bargaining and accommodation between the legislative and executive branches.").

"Constitutional limits on the role of the federal courts preclude such a transformation" of a generalized grievance into a basis for Article III standing. *Allen v. Wright*, 468 U.S. 737, 756

---

debt-ceiling-cata_b_4054950.html ("The perfect trifecta plaintiff is an individual who is a Social Security pensioner, long-term government vendor, and Treasury bondholder.") (last visited Apr. 28, 2014).

(1984). Here, the generalized nature of Plaintiff's asserted harm "does not warrant exercise of jurisdiction." *Warth*, 422 U.S. at 499. As a result, Plaintiff lacks standing, and this Court should dismiss this lawsuit.

## II.   THE COURT SHOULD DISMISS THIS CASE FOR LACK OF JURISDICTION BECAUSE IT IS NOT RIPE

The Court also lacks jurisdiction over Plaintiff's claims because they are unripe. The ripeness doctrine is "drawn both from Article III limitations on judicial power and from prudential reasons for refusing to exercise jurisdiction," *Nat'l Park Hospitality Ass'n v. Dep't of Interior*, 538 U.S. 803, 808 (2003), and "deals with when a federal court can or should decide a case," *Am. Petroleum Inst. v. EPA*, 683 F.3d 382, 386 (D.C. Cir. 2012). The doctrine "restrains courts from hastily intervening into matters that may best be reviewed at another time or in another setting, especially when the uncertain nature of an issue might affect the court's ability to decide intelligently," and especially where—as here—"the issue is one of constitutional import." *Full Value Advisors, LLC v. SEC*, 633 F.3d 1101, 1106-07 (D.C. Cir. 2011) (quotations and citations omitted); *Devia v. NRC*, 492 F.3d 421, 424 (D.C. Cir. 2007). "Determination of the scope and constitutionality of legislation in advance of its immediate adverse effect in the context of a concrete case involves too remote and abstract an inquiry for the proper exercise of the judicial function." *Int'l Longshoremen's & Warehousemen's Union v. Boyd*, 347 U.S. 222, 224 (1954); *Texas v. United States*, 523 U.S. 296, 300 (1998); *Renne*, 501 U.S. at 322, 323.

An "Article III court cannot entertain the claims of a litigant unless they are constitutionally and prudentially ripe." *Wyo. Outdoor Council v. U.S. Forest Serv.*, 165 F.3d 43, 48 (D.C. Cir. 1999) (quotations omitted). Constitutional ripeness "excludes cases not involving present injury," while prudential ripeness requires a court to examine both "'the fitness of the issues for judicial decision' and the 'hardship to the parties of withholding court consideration.'" *Id.* (quoting *Abbott Labs. v. Gardner*, 387 U.S. 136, 149 (1967), *overruled on other grounds in Califano v. Sanders*, 430 U.S. 99 (1977)). Plaintiff's claims fail on both accounts.

### A. Plaintiff's lack of "certainly impending" injury renders his claims constitutionally unripe

"Just as the constitutional standing requirement for Article III jurisdiction bars disputes not involving injury-in-fact, the ripeness requirement excludes cases not involving present injury." *Wyo. Outdoor Council*, 165 F.3d at 48. This is just such a case. Plaintiff does not allege any "present injury" whatsoever from the debt limit statute. *Id.* To the extent Plaintiff alleges potential future injuries in an effort to establish Article III jurisdiction, his allegations do not establish constitutional ripeness for the same reasons they fail to demonstrate constitutional standing. *See supra* at 4-9 (explaining that Plaintiff's injuries are not "certainly impending"); *Am. Petroleum Inst.*, 683 F.3d at 386 ("Part of the [ripeness] doctrine is subsumed into the Article III requirement of standing, which requires a petitioner to allege *inter alia* an injury-in-fact that is 'imminent' or 'certainly impending.'" (quoting *Nat'l Treasury Emps. Union*, 101 F.3d at 1427-28)).

### B. Plaintiff's claims are not fit for judicial decision, and withholding review of those claims will not cause Plaintiff any hardship

"Even if a case is 'constitutionally ripe,' though, there may also be 'prudential reasons for refusing to exercise jurisdiction.'" *Am. Petroleum Inst.*, 683 F.3d at 386. The prudential ripeness doctrine "ensures that Article III courts make decisions only when they have to, and then, only once." *Id.* at 387. In assessing prudential ripeness, courts "focus on two aspects: the 'fitness of the issues for judicial decision' and the extent to which withholding a decision will cause 'hardship to the parties.'" *Id.* (quoting *Abbott Labs.*, 387 U.S. at 149). A "claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all." *Texas*, 523 U.S. at 300; *Devia*, 492 F.3d at 425.

#### 1. Plaintiff's claims rest on uncertain future contingencies and are otherwise unfit for judicial review

As explained above, Plaintiff's claims involve numerous "contingent future events that may not occur as anticipated, or indeed may not occur at all." *Texas*, 523 U.S. at 300. Plaintiff's claims depend, among other hypotheticals, on the pure speculation that, at some unspecified date

in the future, the United States Government will default on its outstanding public debt, and that any such speculated default will extend to Plaintiff's own debt instruments. That is the epitome of an uncertain future contingency—"we have no idea whether or when" it will occur. *Texas*, 523 U.S. at 300 (quotation omitted); *see Renne*, 501 U.S. at 321-22 ("We possess no factual record of an actual or imminent application of [the challenge statutory provision] sufficient to present the constitutional issues in clean-cut and concrete form." (quotations omitted)); *State Farm Mut. Auto. Ins. Co. v. Dole*, 802 F.2d 474, 480 (D.C. Cir. 1986) ("[T]he institutional interest in avoiding speculative controversies is powerfully present here because the evidence before us indicates that the possible rescission about which petitioners are vexed will likely never occur."); *see also, e.g.*, Order, *Keller v. Astrue*, No. 3:11-cv-471 (E.D. Va. July 26, 2011), ECF No. 2 (dismissing action by Social Security beneficiary seeking to protect his benefits in the event of a debt-limit-related default because plaintiff's claim was "built on the assumption that the United States will default on its sovereign debt," and "[t]hat assumption is a contingent future event that may not occur as anticipated or at all"). The same goes for the other links in the long chain of events that must occur for Plaintiff's injuries to materialize. *Supra* at 7-9 (discussing steps required for Plaintiff's alleged harms to materialize).

These future contingencies underlie, and therefore preclude adjudication of, all of Plaintiff's claims. First, Plaintiff's "due process" claim is that, if the government defaults, Defendants would be unable to prioritize debt payments and Plaintiff therefore would be subject to "threatened arbitrary enforcement" in violation of his due process rights. FAC ¶¶ 42(A), 50. That claim rests not only upon the speculative "event of a default," *id.* ¶ 50, but also upon other future speculation, such as how Treasury might react in such an event, as well as whether, when, or how Plaintiff's Treasury securities might be affected. *See, e.g.*, *Worth v. Jackson*, 451 F.3d 854, 862 (D.C. Cir. 2006) ("Even assuming [the government] will someday apply a discriminatory policy to [plaintiff], absent concrete application of that policy, we lack 'sufficient confidence in our powers of imagination' to ascertain its contours." (quoting *Texas*, 523 U.S. at

301)); *see also Ohio Forestry Ass'n v. Sierra Club*, 523 U.S. 726, (1998) (finding claim unfit where "review now may turn out to be unnecessary"); *Nat'l Treasury Empls. Union*, 101 F.3d at 1431 (finding claim unripe because "[i]f we do not decide it now, we may never need to").

Second, the separation of powers violation alleged by Plaintiff assumes a government default or the absence of "regular order." FAC ¶ 42(B); *id.* (citing law-review articles arguing that, in a default scenario, the debt limit statute prevents the Executive from faithfully executing the laws). Although Plaintiff's allegations are unclear on this point, he appears to suggest that once the government is hypothetically unable to meet its ongoing obligations, the "debt ceiling statute makes the President choose which of his three statutory duties he must violate—spending, taxing, or borrowing." *Id.* Plaintiff thus appears to contemplate a future scenario in which the government lacks sufficient funds to meet all of its ongoing obligations, thereby hypothetically "prevent[ing] the Executive Branch from fulfilling its obligations to the Plaintiff." *Id.* This claim too, then, is based on hypothetical, speculative and uncertain future events.

Finally, these same concerns weigh against reviewing Plaintiff's claim that the statute "is in direct violation of Section Four of the Fourteenth Amendment" by questioning the validity of the public debt. *Id.* ¶ 42(A). Plaintiff's Fourteenth Amendment claim, like his other two claims, relies on the alleged prospect or "threat[]" of government default and related "consequences of the statute's enforcement." *Id.* ¶¶ 2, 50; *see also id.* ¶¶ 3-4, 19-33.

Plaintiff's claims are further unfit for judicial review at this time because the statute he seeks to challenge, 31 U.S.C. § 3101(b), is currently not in force and "shall not apply" through March 15, 2015. Temporary Debt Limit Extension Act § 2(a). By that time, Congress may well pass legislation to raise the debt limit or further suspend it, as Congress has regularly done in the nearly 100-year history of debt limit statutes. It is therefore inappropriate to review Plaintiff's claims now, as that would require the Court to assume the "remote and abstract inquiry" of reviewing the "scope and constitutionality" of a statute well "in advance of its immediate adverse effect in the context of a concrete case," *Boyd*, 347 U.S. at 224, and in the context of claims that

rest upon "contingent future events that may not occur as anticipated, or indeed may not occur at all," *Texas*, 523 U.S. at 300.

> ### 2.   Withholding review would cause Plaintiff no hardship

Nor would withholding review of this lawsuit cause Plaintiff any hardship, much less one so "immediate, direct, and significant" as to warrant review of his claims at this time. *La. Envtl. Network*, 87 F.3d at 1385 (quotations omitted). The debt limit statute does not require Plaintiff "to engage in, or to refrain from, any conduct." *Texas*, 523 U.S. at 301. Indeed, the statute currently does not have any effect at all until at least mid-March of next year. This is therefore "not a case like *Abbott Laboratories*, where the regulation at issue had a 'direct effect on the day-to-day business' of the plaintiffs, because they were compelled to affix required labeling to their products under threat of criminal sanction." *Id.*

The only potential hardship suggested in the complaint is the *future* possibility of government non-payment on Plaintiff's Treasury securities. *See* FAC ¶¶ 1, 42. However, the D.C. Circuit has made clear that the hardship requirement is not met where, as here, a plaintiff alleges no current injury from the law at issue. *See Cronin v. FAA*, 73 F.3d 1126, 1133 (D.C. Cir. 1996) ("We find that petitioners can make out no such hardship. The primary injury alleged by petitioners is not a present hardship resulting from the regulations themselves, but rather a future injury that may result from enforcement of the regulations . . . ."). Even if a future injury could establish hardship, that injury cannot be speculative, as it is here. *See Office of Commc'n of United Church of Christ v. FCC*, 826 F.2d 101, 106 (D.C. Cir. 1987) ("[T]he crucial injury that petitioners assert would result from the postponement of . . . review may never occur."); *Grand Lodge of Fraternal Order of Police v. Ashcroft*, 185 F. Supp. 2d 9, 18 (D.D.C. 2001); *supra* at 4-9. Plaintiff can seek judicial relief if and when he develops a justiciable claim. *See La. Envtl. Action Network*, 87 F.3d at 1381.

In short, Plaintiff would suffer no hardship from withholding review of his claims.

## **CONCLUSION**

For all the foregoing reasons, this Court should grant Defendants' motion to dismiss Plaintiff's complaint.

Dated: April 29, 2014                    Respectfully Submitted,

STUART F. DELERY
Assistant Attorney General

RONALD C. MACHEN JR.
United States Attorney

DIANE KELLEHER
Assistant Branch Director
Federal Programs Branch

/s/ Jacek Pruski
JACEK PRUSKI
California Bar No. 277211
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Ave., NW
Washington, D.C. 20530
Tel: (202) 616-2035
Fax: (202) 616-8470
jacek.pruski@usdoj.gov

*Attorneys for Defendants*

17