UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| VICTOR K. WILLIAMS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | |
| v. | ) | Civil Case No. 14-00183 (RJL) |
| | ) | |
| | ) | |
| JACOB J. LEW, | ) | **FILED** |
| | ) | |
| and | ) | JAN 0 6 2015 |
| | ) | |
| U.S. DEPARTMENT OF THE TREASURY, | ) | Clerk, U.S. District & Bankruptcy |
| | ) | Courts for the District of Columbia |
| Defendants. | ) | |

MEMORANDUM OPINION
January 5, 2015 [Dkt. # 7]

Plaintiff Victor K. Williams, ("plaintiff" or "Williams"), a faculty member at the Catholic University School of Law, filed this suit pro se against the United States Department of the Treasury (the "Treasury") and Jacob J. Lew, in his official capacity as Secretary of the Treasury, on February 7, 2014, seeking a declaratory judgment that the federal debt ceiling statute, 31 U.S.C. § 3101, is unconstitutional and void. *See* Compl. ¶ 1 [Dkt. # 1]; *see also* First Am. Compl. for Declaratory J. to Void the Debt Ceiling [Dkt. #4] ("Amended Complaint" or "Am. Compl."). Currently pending before this Court is defendants' Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of standing. *See* Defs' Mot. to Dismiss [Dkt. # 7] ("Defs' Mem."). Because I agree

with defendants that plaintiff has no standing to challenge the debt ceiling statute, the defendants' motion is GRANTED and the case is DISMISSED.

## FACTUAL BACKGROUND

Plaintiff alleges that he "is a United States, taxpayer-citizen who holds a very modest amount of Treasury-issued public debt instruments of varied types and durations." Am. Compl. ¶ 36. Specifically, plaintiff is the "purchaser and holder of United States public debt in the form of savings bonds and Treasury bills, notes, bonds, and TIPS of various durations (4-weeks, 13-weeks, 26-weeks, 52-weeks, 3-years, 5-years, 7-years, 30-years)." Am. Compl. ¶ 39.

Plaintiff seeks to invalidate the federal debt limit statute, 31 U.S.C. § 3101, which limits the amount of public debt that may be outstanding at one time. *Id.* § 3101(b).[1] The debt limit is currently suspended, and therefore not in effect, through March 15, 2015. *See* Temporary Debt Limit Extension Act, Pub. L. No. 113-83, § 2(a), 128 Stat. 1011, 1011 (2014). Plaintiff claims that the debt limit statute violates the Fourteenth Amendment to the Constitution of the United States, plaintiff's Fifth Amendment due process rights, and the Constitution's "structural and functional separation of powers in

---

[1] 31 U.S.C.A. § 3101(b) provides:

> The face amount of obligations issued under this chapter and the face amount of obligations whose principal and interest are guaranteed by the United States Government (except guaranteed obligations held by the Secretary of the Treasury) may not be more than $14,294,000,000,000, outstanding at one time, subject to changes periodically made in that amount as provided by law through the congressional budget process described in Rule XLIX of the Rules of the House of Representatives or as provided by section 3101A or otherwise.

preventing the Executive from carrying out sworn Article II § 3 duties." Am. Compl. ¶ 42. Plaintiff requests a declaratory judgment that the debit limit statute is unconstitutional and void, a permanent injunction to prohibit defendants from relying upon, invoking, or enforcing the debt ceiling, or alternatively a writ of mandamus to compel defendants to treat the debt ceiling statute as null and void. *Id.* at 30.

Plaintiff asserts that he has Article III standing because he is "the purchaser and holder of United States public debt in the form of savings bonds and Treasury bills, notes, bonds, and TIPS of various durations" and that this is a "direct, individual, concrete, and certainly impending harm from the unconstitutional debt ceiling statute." Am. Compl. ¶¶ 36, 39.

## ANALYSIS

"Three inter-related judicial doctrines—standing, mootness, and ripeness, ensure that federal courts assert jurisdiction only over 'Cases' and 'Controversies.'" *Worth v. Jackson*, 451 F.3d 854, 855 (D.C. Cir. 2006). A core element of Article III's case-or-controversy requirement is that a plaintiff have standing to sue. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). To satisfy this burden, "[a] plaintiff must allege personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief." *Allen v. Wright*, 468 U.S. 737, 751 (1984). Thus, a party has standing if his claims "spring from an 'injury in fact'-an invasion of a legally protected interest that is 'concrete and particularized,' 'actual or imminent' and 'fairly

3

traceable' to the challenged act of the defendant, and likely to be redressed by a favorable decision in the federal court." *Navegar, Inc. v. United States*, 103 F.3d 994, 998 (D.C. Cir. 1997) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. at 560-61). "[T]hroughout the litigation, the plaintiff 'must have suffered, or be threatened with, an actual injury traceable to the defendant and likely to be redressed by a favorable judicial decision.'" *Spencer v. Kemna*, 523 U.S. 1, 7 (1998) (quoting *Lewis v. Continental Bank Corp.*, 494 U.S. 472, 477 (1990)). If, at any time, the Court determines that it lacks subject matter jurisdiction, the action must be dismissed. Fed. R. Civ. P. 12(h).

Plaintiff does not allege any current injury, but claims standing on the basis of anticipated future harm only. *See* Am. Compl. ¶¶ 39, 42. The allegations of harm rest on an *assumption* that the government will fail to pay on plaintiff's "modest sum" of public debt if the debt ceiling is not raised. Am. Compl. ¶¶ 39, 54; *see also id.* ¶ 50 (describing "in the event of a default" plaintiff's alleged interest in "whether and how the Defendants will meet concurrent obligations such as payment of [plaintiff's] debt and that of various state sovereign entitlement programs"). To satisfy Article III standing, however, the future injury must be "imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at 560. This requirement "ensure[s] that the alleged injury is not too speculative for Article III purposes—that the injury is *certainly* impending." *Id.* at 564 n.2 (quotations omitted). Indeed, the Supreme Court has "repeatedly reiterated," a "'threatened injury must be *certainly impending* to constitute injury in fact,'" and "'allegations of *possible* future

injury' are not sufficient." *Clapper v. Amnesty Int'l USA*, 133 S. Ct. 1138, 1147 (2013) (quoting *Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990)). Plaintiff's standing allegations here are, to say the least, speculative. They rest on the hypothetical premise that the United States government will, at some unknown future date, fail to pay on plaintiff's Treasury securities because of the debt limit statute, despite the fact that the United States government has *never* defaulted on its debt obligations as a result of a failure by Congress to increase the debt limit. *See* Defs' Mem. at 7. Thus, the unprecedented government default plaintiff fears is, at most, a mere "*possible* future injury," and not one that is "*certainly* impending." *Clapper*, 133 S. Ct. at 1147 (quotations omitted).

Similarly, standing cannot rest on a "speculative chain of possibilities." *Clapper*, 133 S. Ct. at 1150; *see also, e.g., United Transp. Union v. ICC*, 891 F.2d 908, 912 (D.C. Cir. 1989) ("[W]hen considering any chain of allegations for standing purposes," the Court "may reject as overly speculative those links which are predictions of future events (especially future actions to be taken by third parties) and those which predict a future injury that will result from present or ongoing actions[.]"). Here, several speculative contingences must occur before plaintiff is harmed by the debt ceiling statute. First, the debt limit itself must be reached, but as plaintiff acknowledges, the statute is currently suspended until March 2015. *See* Am. Compl. ¶ 4. Second, even if the debt limit is reached, Treasury has the authority to take certain measures to temporarily preserve

5

lawful borrowing authority without exceeding the debt limit.[2] Third, once those measures were exhausted, the United States would still be able to fund its obligations with the cash it has on hand any given day.[3] Even then, it would still remain uncertain whether the securities plaintiff holds would be affected, i.e., whether plaintiff would continue to hold those securities at the time of a future hypothetical default, or whether a principal or interest payment on plaintiff's particular securities would come due during a default. Such multi-tiered speculations are inconsistent with Article III standing. *La. Envtl. Action Network v. Browner*, 87 F.3d 1379, 1383 (D.C. Dir. 1996); *see also Jones & Assocs., Inc. v. Dist. of Columbia*, 797 F. Supp. 2d 129, 134 (D.D.C. 2011) ("Potential harms and possible placement in jeopardy are precisely the type of conjectural [and] hypothetical injuries that fail to satisfy Article III standing requirements." (quotations omitted)).[4]

---

[2] See, e.g., Letter from Secretary Jacob J. Lew to Honorable John A. Boehner, May 17, 2013, available at http://www.treasury.gov/initiatives/Documents/Debt%20Limit%205-17-13%20Boehner.pdf (describing "extraordinary measures" in appendix) (last visited Dec. 12, 2014).

[3] See, e.g., Letter from Secretary Jacob J. Lew to Honorable John A. Boehner, Aug. 26, 2013, available at http://www.treasury.gov/initiatives/documents/082613%20debt%20limit%20letter%20to%20congress.pdf (last visited Dec. 12, 2014).

[4] Plaintiff's due process claims are even more speculative: if the government defaults, defendants would be unable to prioritize debt payments and plaintiff therefore would be subject to "threatened arbitrary enforcement." Am. Compl. ¶¶ 42, 50. However, no such plan or policy for prioritizing debt payments has even been formed. *See Worth v. Jackson*, 451 F.3d 854, 862 (D.C. Cir. 2006) ("Even assuming [the government] will someday apply a discriminatory policy to [plaintiff], absent concrete application of that policy, we lack sufficient confidence in our powers of imagination to ascertain its contours." (quotations omitted)).

Finally, plaintiff fails to allege standing for the additional reason that he does not raise anything more than a general grievance. The Supreme Court has "consistently held that a plaintiff raising only a generally available grievance about government-claiming only harm to his and every citizen's interest in proper application of the Constitution and laws, and seeking relief that no more directly and tangibly benefits him than it does the public at large-does not state an Article III case or controversy." *Lujan*, 504 U.S. at 573-74. Where, as here, "[p]laintiff's stake is no greater and his status no more differentiated than that of millions of other voters[,] . . . his harm is too vague and its effects too attenuated to confer standing on any and all voters." *Berg v. Obama*, 574 F. Supp. 2d 509, 519 (E.D. Pa. 2008), *aff'd*, 586 F.3d 234 (3d Cir. 2009). Plaintiff acknowledges, as he must, that any future default would be felt not only by every holder of the public debt, *see* Am. Compl. ¶ 1, but also by every person or organization on the receiving end of the Treasury's "millions of daily automated payments", *id.* ¶ 24, and every person or organization affected by the government's "other vested debt obligations (e.g., Social Security, Medicare, Medcaid, and veterans' pensions)," or "basic government operations (e.g., regulations, defense, infrastructure, and federal courts/justice)," *id.* ¶ 5. Unfortunately for the plaintiff, such a harm is nothing more than "a generalized grievance shared in substantially equal measure by all or a large class of citizens." *Warth v. Seldin*, 422 U.S. 490, 499, (1975). Such a harm, alone, "normally does not warrant exercise of jurisdiction." *Id.*; *see also Reuss v. Balles*, 584 F.2d 461, 469 (D.C. Cir. 1978) (rejecting

a "bondholder theory" of standing and finding assertion that government action "could reduce the value of [plaintiff's] bonds in several ways" was "a very generalized grievance, one held in common, to some degree, by virtually all members of the public"). Accordingly, plaintiff here does not have the type of harm that warrants standing.

## CONCLUSION

For the reasons stated above, defendants' Motion to Dismiss will be GRANTED, and this civil action will be DISMISSED for lack of subject matter jurisdiction. An Order accompanies this Memorandum Opinion.

_____
RICHARD J. LEON
United States District Judge